Robinson, J.
 

 Rice B. Neighbours was arrested in the state of Tennessee in November, 1928, and in December thereafter was indicted by the grand jury of Lucas county, Ohio, for uttering and publishing, on the 16th day of March, 1925, at lucas county, Ohio, a false, forged, and counterfeited order for the payment of money. In February, 1929, he was tried, found guilty, and sentenced to serve a term of imprisonment in the Ohio penitentiary. The judgment of the trial court was affirmed by the Court of Appeals.
 

 It was the theory of the state that the defendant had joined with two of his brothers, Henry and Ralph, in the commission of the offense charged. Henry had been apprehended, indicted, tried, and convicted in 1925. After the conviction of Henry
 
 *527
 
 and while he was at the jail, either awaiting sentence or transportation to the Ohio penitentiary, a written confession was obtained from him by Ramsey R. Dwyer and J. J. McHugh, police officers of the Michigan Central Railroad Company, in which confession he implicated the defendant and his brother Ralph. That confession was not offered in evidence, and there apparently never was any purpose or intention on the part of counsel for the state to do so; but evidence relating thereto -was offered by the state and admitted by the court, as follows:
 

 “ Q. Now, after Henry Neighbours’ trial had concluded, while he was being retained over in the county jail, did you have any conversation with Henry Neighbours? A. Yes, sir.
 

 “Mr. Christens en: I object.
 

 ‘ ‘
 
 The Court: Wait until he asks a question.
 

 “Q. During the time that you conversed with Henry Neighbours over in the county jail and after his trial I mean, did you obtain any writing of any description from him? A. Yes, sir.
 

 “Mr. Christensen: Again I object on the ground of hearsay if the Court please.
 

 “The Court: What are you objecting to? There is nothing before the Court.
 

 “Mr. Christensen: These exhibits are before the Court if the Court cares to look at them.
 

 “The Court: There is nothing before the Court that I know of, not a thing.
 

 “Mr, Christensen: Exception.
 

 “Q. I show you Exhibit No. 13 and ask you if you recognize that paper? A. Yes, sir.
 

 “Q. And when did you first see or get that paper, Mr. Dwyer? A. June 23rd, 1925, in the presence of
 
 *528
 
 Mr. J. J. McHugh, who got it from Mr. Henry Neighbours * * *.
 

 “Q. Where was that obtained? A. At the county jail.
 

 “Q. Did you bring that here today? A. Yes, sir.
 

 “Q. Showing you State’s Exhibit No. 15, is that the confession you obtained from Henry Neighbours? A. That is the confession obtained through J. J. McHugh, chief of police of the Michigan Cen tral.
 

 “Q. Were you present when that was obtained? A. Yes, I was present and signed the statement, yes.
 

 “Q. Was that after his trial in Common Pleas Court here or before? A. After.
 

 “Q. And yoúr conversation that you had with him at -¿he county jail, did it pertain to the other persons that you have passed checks at the same time?
 

 “Mr. Christensen: I object, hearsay.
 

 “The Court: Overruled.
 

 “A. Yes, sir.
 

 “By Mr. Irwin: I am not going to attempt to produce that conversation.
 

 “Q. What is the date that statement, Exhibit 15 was obtained from Henry Neighbours? A. June 23rd, 1925.
 

 ‘ ‘ Q. With reference to that date, when was it you obtained this writing marked Exhibit No. 13? A. At the same time.”
 

 While no objection was made to the question, “Showing you state’s Exhibit 15, is that the confession you obtained from Henry Neighbours?” and to the answer, “That is the confession obtained through J. J. McHqgh, chief of police of the Miehi
 
 *529
 
 gan Central,” when the state undertook to inform the jury that Henry Neighbours’ signed confession implicated the defendant in the crime to which Henry had confessed, and of which he had been convicted, and which was the same crime for which the defendant was then on trial, by the question, “And your conversation that you had with him at the county jail, did it pertain to the other persons that you have passed checks at the same time?” counsel for the defendant objected, and his objection was overruled, and the witness was permitted to and did answer, “Yes, sir.”
 

 Henry Neighbours was not called as a witness at the trial of the defendant. The offering of testimony to the effect that Henry Neighbours had signed a confession admitting his participation in the crime for the commission of which the defendant was then on trial, and that in such confession or in a conversation between Henry and one of the police officers Henry had stated that the defendant had partici pated with him in such crime, manifestly was an effort to inform the jury of the contents of such incompetent written confession; and its admission was as prejudicial as the admission of the written confession itself would have been. It secured to the state the advantage of the evidence of Henry Neighbours that the defendant had participated in the crime, without the state incurring the risk incident to the cross-examination of Henry.
 

 A prosecuting attorney has discharged his full duty to the state when he has presented such competent evidence as he is able to obtain. When in his zeal he attempts to strengthen his case "by the introduction of incompetent evidence, or by artifice to
 
 *530
 
 convey information to the jury, which he cannot convey to it otherwise, he but defeats his own purpose and the purpose of the state which he represents, for it is not, and must not be, the purpose of the state to convict an accused upon other than competent evidence, nor by artifice to deny him a fair trial.
 

 State’s Exhibit 13 was obtained from Henry Neighbours at the same time his confession was obtained, and, according to the record, was delivered to Mr. Dwyer and kept in his possession until after the defendant had been arrested in Memphis, and had not theretofore been seen by the defendant. It read :
 

 “June 23rd., Toledo, Ohio.
 

 “Dear Ralph and Rice: — If either of you are apprehended at any time in this or another state, I advise both or either of you to waive extradition and come to Toledo, Ohio, voluntarily and confess to having forged and cashed the M. 0. R. R. checks.
 

 “The arresting officers Mr. R. R. Dwyer and John Hovey and B. B. Amos have been very fair and square with me and I am sure they will do the same to you.
 

 “Henry B. Neighbours.”
 

 The only circumstance distinguishing this letter from the confession was the testimony of James O’Reilly, the arresting officer, who testified that he showed the letter to the defendant in Tennessee in 1928 after he had arrested him; that he read it to him, and the first time he read it he made no comment upon it, but that later on, en route from Tennessee to Toledo, defendant looked this exhibit over and said the signature was Henry’s, but that he did not think the body of the letter was in Henry’s
 
 *531
 
 handwriting; that at the same time he (O’Reilly) showed State’s Exhibit 14 to the defendant, which exhibit was a letter from his brother Horace, living in Cleveland, who it is not claimed had any personal knowledge of the crime with which the defendant was charged, or of the defendant’s connection therewith, and that with reference to this exhibit defendant stated that he recognized it as being wholly in the handwriting of his brother Horace. That exhibit reads:
 

 “Cleveland, July 13, 1925.
 

 “Dear Rice & Bud: This will introduce to you Capt. Dwyer of the M. C. R. R. Henry has made clean confession of all checks cashed, and has been treated right, and is only sorry he did not confess at the outset. Whatever Mr. Dwyer tells you two can be depended upon, and if you are arrested give the police as little trouble as possible and do not try to fight extradition, as Mr. Dwyer and I have had a long talk and I understand the whole situation and you had better have it over as soon as possible. He can save you two lots of trouble by blocking several warrants they have for you two. Hoping this meets your approval.
 

 “Your Bro. Horace.”
 

 State’s Exhibits 13 and 14 were offered by the state, and admitted in evidence in its case in chief, over the objection of the defendant, with no other circumstance than above related tending to make them competent.
 

 The fact that the defendant stated that he believed the signature of Henry to be genuine, and the whole of the letter and the signature of Horace to be genuine, was in no way an admission by him of the truth
 
 *532
 
 of the statements contained in such exhibits; nor were the exhibits of such a character as to require of him, under the circumstances, any comment. The defendant, guilty or innocent, had the right to have his case submitted to the jury upon competent evidence only. The defendant took the stand and denied all connection with the crime. In the absence of an admission by the defendant upon the stand or in open court of his participation in the crime, or of his guilt, the admission of evidence with reference to the confession of Henry Neighbours and the introduction of State’s Exhibits 13 and 14 were so prejudicial as to have prevented a fair trial.
 

 The order for the payment of money, upon which the indictment was based, purported to be signed by one C. H. Ladd, who was called by the state as a witness, and testified that the signature to the order was not his signature and that it was unauthorized. Upon cross-examination he was handed a blank paper and requested to write thereon his name,which he did. The paper was then marked as defendant’s exhibit, and subsequently, as a part of the defendant’s defense, was offered in evidence, and, upon the objection of the state, its admission was denied. It was competent when offered by the party so cross-examining. 22 Corpus Juris, page 784, Section 888, and cases there cited.
 

 The judgment of conviction will be reversed, the verdict of the jury will be set aside, and the cause remanded for further proceedings according to law.
 

 Judgment reversed and cause remanded.
 

 Kinkade, Jones, Matthias and Ahlen, JJ., concur.
 

 Marshall, C. J., and Day, J., not participating.